In the Matter of JOSEPH KAMHI, an Infant.

Surrogate's Court, Kings County, May 15, 1933.

*Breitbart & Breitbart*, for the petitioner.

*Abraham Feit*, for the respondent.

WINGATE, S. The astounding facts relevant to this proceeding are wholly uncontroverted. On December 29, 1926, Regina Kamhi and Harry Kamhi were appointed guardians for the infant, Joseph Kamhi, jointly with the clerk of the Surrogate's Court. The entire estate of the infant consisted of approximately $2,400, which was deposited with the Lincoln Savings Bank under savings bank book K-1426.

The infant's brother, Max Kamhi, was the owner of a four-family tenement at 521 Hegeman avenue, Brooklyn, N. Y., one of the apartments of which was occupied by Regina Kamhi, mother of the infant, and nine children, of whom this infant was one. The

present respondent, Sam Cohen, was the owner of a second mortgage on these premises. This incumbrance provided for the payment of certain sums by way of amortization. The owner defaulted in one or more of these payments, whereupon an agreement was executed under date of October 7, 1932, by Cohen, Max Kamhi, Regina Kamhi, Harry Kamhi and the infant, by which Harry, Regina and the infant agreed to become primarily liable with Max for the indebtedness on this second mortgage, the agreement continuing " that the deposit in the Lincoln Savings Bank K-1426 be assigned as further security, but to be absolute if the balance is not paid by April 15, 1935." Pursuant to this agreement the savings bank book evidencing the guardianship deposit was delivered to Cohen. This proceeding seeks its recovery from him.

It is primary that the relationship existing between a guardian and his infant ward is that of trustee and *cestui que trust*. (*Warren v. Union Bank of Rochester*, 157 N. Y. 259, 269; *Matter of Pinchefski*, 179 App. Div. 578, 581; *Matter of Stude*, 179 Iowa, 785; *Title Guaranty & Surety Co.* v. *Cowen*, 71 Okla. 299.)

This relationship imposes on the guardian the obligation of exclusive custodianship of the property of his ward. (*Matter of Pinchefski, supra.*)

It is also fundamental that, so long as a trust continues, the beneficiary thereunder has no right of dominion over or disposition of the trust property. (See *Bushe* v. *Wright*, 118 App. Div. 320, 328; *Matter of Meehan*, 104 Misc. 219, 222; *Matter of Harbeck*, 142 id. 57, 68.) It follows, therefore, that any act of the infant in this connection, looking to the surrender of, or charge upon, his rights in the trust fund, was wholly nugatory and conferred neither a right to possession of the fund nor of the indicia of ownership thereof to the transferee.

Even in the absence of the restraining directions contained in the order of appointment in this case, to the effect that these funds of the infant were wholly subject to the further order of this court, the guardian of his property possessed absolutely no power or authority to mortgage or pledge its avails. (*First Nat. Bank* v. *National Broadway Bank*, 156 N. Y. 459, 471; *Potter* v. *Hodgman*, 81 App. Div. 233, 237; affd., 178 N. Y. 580; *Poultney* v. *Randall*, 9 Bosw. 232, 236.) As a result, the action of the guardian in the pledge and surrender of this savings bank account amounted to a devastavit and was wholly without legal justification.

Since the pledgee was fully aware of the trust character of the property so attempted to be conveyed to him, the familiar principle noted in *Warren* v. *Union Bank of Rochester* (157 N. Y. 259, at p. 268) and innumerable other authorities is applicable: " Another

principle firmly established by the cases is, that trust funds invested by trustees in the hands of third persons who have knowledge of their character, still remain impressed with the obligation of the trust in the hands of the holder, and are subject to be reclaimed and restored to the trust fund. (*Wilmerding* v. *McKesson* [103 N. Y. 329]; *Wetmore* v. *Porter* [92 N. Y. 76]; *Rogers* v. *Squires*, 98 N. Y. 49; *Clark* v. *Hougham*, 2 B. & C. 149; Perry on Trusts, §§ 828, 832; Williams on Executors, 801; *Field* v. *Schieffelin*, 7 Johns. Ch. 150.)

" It is beyond the power of a trustee to bind the estate he represents to any use of its funds by contract with third persons who have knowledge of the character of the property transferred, except in the ordinary and usual course of administration of the trust, and in furtherance of its object. (*Deobold* v. *Oppermann*, 111 N. Y. 531, 538.) "

It follows that the respondent, being *particeps criminis* in the devastavit, received the indicia of ownership of the guardianship bank account impressed with a trust and is under obligation to return it.

Whether or not the assignee possesses any remedy against the infant by reason of the contract which the latter has expressly disaffirmed, is a question which must be determined in another tribunal, since it is elementary that the only manner of decision of such a controversy is by an ordinary action in a court of general jurisdiction. (*Matter of Greenhalgh*, 64 Hun, 26.)

The return of the bank book to its proper custodians will be directed, with costs.