In the Matter of the Estate of OTTO PRESSPRICH, Deceased.

Surrogate's Court, New York County. November 18, 1924.

Wills — construction — will, after directing setting up separate trusts by bequest to trustees of certain public utility bonds, empowered executors and trustees to sell any securities in which principal of trust was invested when " non income producing " and provided for division of residue of estate into three residuary trusts — provision in will relating to sale of securities only when " non income producing " does not prohibit sale by trustees of any securities now part of residuary estate or of public utility investments — gift to trustees does not restrict their right or duty to sell securities — trustees have power to sell public utility securities before they reach " non income producing " status in exercise of discretion and judgment.

The provisions in a will which, after directing the setting up of six specific trusts by the bequest to the trustees of certain public utility bonds, empowered the executors and trustees to sell any securities in which the principal of the trust was invested, when " non income producing," and provided for a division of the residue of the estate, which included investments other than the mortgage bonds, into three residuary trusts, do not prohibit the sale by the trustees of any securities taken over by them and constituting a part of the residuary trusts, where there is no express direction to the executors or trustees to retain the other securities owned by the testator at the time of his death, but they are given express authority to administer the estate and conduct the sale of investments and reinvest the proceeds.

The gift of the residue of an estate to executors or trustees is not a gift of specific securities owned by the decedent at his death, nor does it restrict the ordinary right and duty of the executor or trustee to sell the securities.

The language of the will providing for the sale of any bonds, securities and properties in which the principal of the six specific trusts is invested when they become " non income producing " does not prohibit the sale of the public utility bonds before they reach the " non income producing " stage, but is rather a power to sell in the exercise of discretion and judgment, since the provision imports discretion and authority rather than an absolute prohibition. Furthermore, if the provisions were construed as compulsory rather than advisory, the life tenants and remaindermen of the trusts would suffer serious losses, if not a total destruction of the trust funds.

PROCEEDING for construction of a will.

*Glenn & Ganter* [*Garrard Glenn* and *Frank W. Demuth* of counsel], for the trustees.

*Man & Man* [*Henry H. Man* of counsel], for Walter Prescott.

*Thomas J. Meehan*, special guardian.

Surrogate's Court, New York County, November, 1924.     [Vol. 124

FOLEY, S.:

The trustees appointed by the testator's will apply for a construction of its provisions, and particularly paragraph 12, as to the power vested in them to sell certain securities in the trust funds. The will directed the setting up of six separate trusts for the benefit of certain of his relations by the bequest to the trustees of specifically named securities, to wit, the first mortgage sinking fund six per cent twenty-year gold bonds of the United States Light and Heat Corporation. The will further directed, by paragraph 11, that the residue and remainder of the estate, after the payment of certain pecuniary legacies and the setting up of the trusts hereinbefore mentioned, be given to his trustees with instructions to divide the residuary estate into " three separate, distinct and equal trust funds." The first residuary trust was created for the benefit of his wife for life; the second and third for the benefit of his sons Edward and Richard respectively.

Under paragraph 2 the testator provided: " In all matters involving the administration of my estate, the sale, investment, or reinvestment of my property or monies, and the execution of this will, the decision of a majority of my executors or their successors shall prevail." That paragraph likewise appointed a trust company, the testator's wife and one James Chambers as executors and trustees of the estate.

The paragraph particularly sought to be construed here reads as follows:

" *Twelfth.* I hereby empower my executors and trustees hereinbefore named to sell any of the bonds, securities and properties in which the principal of the trusts hereinbefore set forth are invested only when non-income producing and then only if and when a majority of my executors and trustees deem it advisable, and to invest and reinvest the proceeds of such sale in such manner and securities as trustees and savings banks, under the laws of the State of New York, are permitted to invest trust funds in."

The securities taken over by the trustees under the residuary clause consisted of common stock and preferred stock of various corporations and in part of bonds which do not constitute legal investments for trust funds under section 111 of the Decedent Estate Law or the provisions of section 239 of the Banking Law. Many of these investments are highly speculative and have been subject to wide fluctuations in value. The trustees state that they are in doubt as to their right to sell any of these securities and request the instruction of the surrogate as to their powers.

(1) In my opinion the language of paragraph 12 relating to the sale of securities only when " non-income producing " has no

application to the various investments left by the testator other than the United States Light and Heat Corporation bonds in the specific trusts. There was no express direction to the executors or trustees to retain the other securities owned by him at the time of death, nor indeed is there any mention of the securities left by him excepting the United States Light and Heat bonds specifically bequeathed to the trustees for the six separate trusts under the 3d, 4th, 5th, 6th, 7th and 8th paragraphs of the will.

Under the provisions of paragraph 2 of the will, authority had been vested in a majority of the three executors and trustees to administer the estate and to conduct the sale of investments and the reinvestment of the proceeds. The testator must have contemplated the sale of sufficient stocks and bonds to pay his debts and to pay the general pecuniary legacies. He also must have intended the sale of sufficient securities to equalize the three residuary trust funds as directed in his will. The gift of the residue of an estate to executors or trustees is not a gift of the specific securities owned by the decedent at his death, nor does it restrict the ordinary right and duty of the executor or trustee to sell the securities. (*Matter of N. Y. Life Insurance & Trust Co.* [*Estate of Saxer*], 86 App. Div. 247.) Paragraph 12, therefore, must be held not to prohibit the sale by the trustees of any of the securities taken over by them and now constituting part of the residuary trusts.

(2) Nor am I of the opinion that the language of paragraph 12 prohibited the sale of the United States Light and Heat Corporation bonds in the six specific trusts. The beginning of that paragraph imports discretion and authority rather than an absolute prohibition against the sale of the securities before they become non-income producing. It is a matter of common experience that securities greatly depreciate in value in advance of an actual suspension of dividends or cessation of payment of interest on bonds. If the language of that paragraph were construed as compulsory rather than advisory, the life tenants and remaindermen of the trusts were bound to sustain serious losses, if not an entire destruction of the trust funds. While the exact point involved here does not appear to have been passed upon by the authorities in this State, it does appear that somewhat similar provisions contained in a will have been construed by the courts from the standpoint of the protection of trust funds rather than blind obedience to the language used by the testator. Thus in *Bigelow v. Tilden* (52 App. Div. 390) the First Department in construing the will of Samuel J. Tilden held that somewhat similar language

did not prohibit the sale of the securities in the trust fund.   Again in *Matter of Varet* (181 App. Div. 446), where the will directed the executor to sell and convert all the real and personal estate " as soon as may be after my decease," it was held that the discretion of the executor remained unfettered provided he acted in good faith and that he was not required to sell forthwith upon the issuance of letters testamentary to him.   The opinion of Mr. Justice SCOTT in that case cited *Chanler* v. *New York Elev. R. R. Co.* (34 App. Div. 305, 307), and quoted therefrom as follows: " ' It is well settled that where an absolute power of sale is conferred upon an executor, the addition of words suggesting a time for its exercise, or indicating the testator's desire in that regard, do not restrain or limit the action of the executor.' "   This rule has likewise been applied to trustees.   (See, also, *Robert* v. *Corning*, 89 N. Y. 225; *Guaranty Trust Co.* v. *United States Steel Corp.*, 107 Misc. 720; affd., 187 App. Div. 889; affd., 226 N. Y. 693; *Toronto Gen. Trusts Co.* v. *Chicago, etc., R. R. Co.*, 64 Hun, 1; affd., 138 N. Y. 657; *Matter of Wotton*, 59 App. Div. 584; affd., 167 N. Y. 629.)   In other jurisdictions likewise this general rule has been followed.   Thus in *Weld* v. *Weld* (23 R. I. 311) the will provided: " I give my trustees unlimited powers, but none of the principal of this estate is to be sold or exchanged unless par is obtained for the railroad bonds." It was held that the words " unlimited powers " given to the trustees meant full powers of management, investment and reinvestment, and the court stated: " If it should appear at any time that the bonds were diminishing in value and that they should be sold to prevent shrinkage and loss to the estate, undoubtedly the court could order a sale, notwithstanding the provisions of the will, since the evident expectation of the testator was that the bonds were to appreciate and not to depreciate." (See, also, *Stout* v. *Stout*, 192 Ky. 504; *Johns* v. *Montgomery*, 265 Ill. 21; *Packard* v. *Illinois T. & S. Bank*, 261 id. 450.)

It is significant in this will also that in each one of the paragraphs in reference to the trusts of the United States Light and Heat Corporation bonds that there was a direction to pay over at the termination of the trust the " said bonds or the proceeds thereof if sold," thereby showing an expectation by the testator of a sale of the securities during the period of the trust.

Under the special provisions of this will and for the purpose of safeguarding the trust estate, I hold, therefore, there is a complete power of sale in the trustees over the United States Light and Heat Corporation bonds before the securities reach the non-income producing status.   If sold the proceeds should be reinvested in only those investments authorized by law for trustees.   My deter-

mination necessarily requires the trustees to exercise their discretion, diligence, judgment and prudence in the sale of the securities under the rules laid down for observance by trustees.

Submit decree construing the will accordingly.