OPINION OF THE COURT
Renee R. Roth, S.
In this proceeding for construction of its investment powers, the trustee requests the court to determine whether the investment directives contained in the trust instruments are permissive or mandatory. If the directives are determined to be mandatory, the trustee seeks permission to invest in securities yielding a higher income than those specified in the instrument in order to better accomplish the grantor’s purpose.
The charitable trust was created by Caroline Talman in 1891 for the benefit of the Memorial Church of the Beloved Disciple. The purpose of the trust as stated in the instrument was to maintain the entire church edifice, vestry house and rectory in constant repair and preservation. In order to accomplish this purpose, the trust was initially funded with $98,000 and thereafter increased by transfers made in accordance with two indentures in 1894 and 1897 and bequests under the grantor’s will creating a total fund of $120,000.
The grantor’s directions to the trustee for investment of the fund contained in the indenture of September 25, 1897 are as *861 follows: “To hold said securities or in the discretion of the trustees * * * to sell and dispose of the same or any part thereof * * * to invest and keep invested from time to time the net proceeds of such sale or sales in the discretion of said trustees either in bonds or stocks of the United States or of the State of New York or upon improved real estate situated in the City of New York or upon first mortgage railway bonds or in the purchase of improved real estate in the City of New York”.
The trustee contends that the income from the fund, invested as provided by the grantor, is totally inadequate to serve her stated purpose and it requests the court to determine whether the above-quoted directions are permissive or mandatory and, if they are the latter, it requests authorization to deviate from its terms because of changed circumstances.
It is noted that Mrs. Talman’s investment directions to her trustee were more liberal than the statutory investment authority granted to fiduciaries at that time. Unless the governing instruments permitted broader powers, the investments of fiduciaries were then restricted to “bonds or stocks of any of the cities of the State” (L 1889, ch 65; L 1897, ch 417, § 9).
The trustee therefore suggests that since Mrs. Talman’s investment directions enlarged the statutory authority of fiduciaries, it may be inferred that she intended her directions to be permissive. However, it may also logically be reasoned that having extended the trustee’s investment authority beyond statutory limitations, Mrs. Taiman intended her directions to be mandatory.
Interestingly, in the period when these indentures were made, investments in the stock of private profit corporations were distrusted and it was not until some 40 years later that fiduciaries, for the first time, were permitted to invest in the stock of private corporations and then only up to 35% of the fund (Personal Property Law [former] § 21 [1] [m]). It is understandable that the consequences of the» economic judgments of the late 1800’s have affected the value of the trust fund today. The fund of $120,000 in 1897 is still $120,000 in 1984. But the purchasing power of its income has been seriously eroded.
Trusts are governed by EPTL articles 7 and 8. Express or private trusts, other than charitable trusts, are classified as indestructible (Matter of Wentworth, 230 NY 176). Except for allowing application of principal to income beneficiaries in certáin circumstances, the Legislature has refused to authorize deviations from the statutory restrictions of EPTL article 7 (see, *862 Sixth Report of Temporary State Commn on Estates, Report No. 6.6.1A, Appendix L-3, at 284-324 [1967]).
However, New York courts have been liberal in permitting deviations from the terms of the governing instruments when they are not in conflict with the law (see, e.g., Mertz v Guaranty Trust Co., 247 NY 137; Matter of McCann, 36 Misc 2d 144; Matter of O’Donnell, 221 NY 197; Matter of Roche, 233 App Div 236, mod on other grounds 259 NY 458; Matter of Morgan, 13 Misc 2d 214; Matter of Young, 178 Misc 378; Matter of Pulitzer, 139 Misc 575, affd 237 App Div 808).
In Mertz (supra), testator had directed that tinder no circumstances should his trustees sell certain shares of stock. The stock had become unproductive. Judge Cardozo held: “A trustee finds upon his hands an investment, mandatory in its origin, but so changed as to be no longer mandatory, even if permitted. A power of sale [attends] in such circumstances by implication of law” (p 144)..
Surrogate Foley, confronted with a similar situation in Matter of Pulitzer (supra, p 583) held:
“The trustees here find themselves in a crisis where there is no self-help available to them. A judicial declaration is necessary, not only as to their general authority, but as to the effect of the words of Mr. Pulitzer contained in his will * * *
“I accordingly hold * * * that the trustees have general power and authority to act in the conveyance of the assets proposed to be sold, and that this court, in the exercise of its equitable jurisdiction, should authorize them * * * in the decree to exercise such general authority.”
Finally, the court in Matter of Morgan (supra), was confronted with limitations on the investment authority of the trustees which were very similar to those in the instrument before this court. The court held: “Where the provisions of a will limiting the trustee to a particular type of investment is [sic] held to be inapplicable under current economic conditions, the trustee will be relieved from the restrictive provision of the will, and will be permitted to invest trust funds in the investments authorized by law. This was decided by Surrogate Frankenthaler in Matter of Flanagan (199 Misc. 842 * * *) and by Surrogate Collins in Matter of Daly (203 Misc. 851, 854-855)” (p 220).
Mrs. Talman’s trust is however not a testamentary trust but is an inter vivas charitable trust governed by the statutory provision of EPTL article 8 which contains the doctrines of cy pres and equitable deviation in changed circumstances. Both these *863 doctrines were in effect when the grantor made these indentures (Personal Property Law [former] § 12 [2]).
The statute provided then as it does now: “[W]henever it shall appear to the court that circumstances have so changed since the execution of an instrument containing a gift, grant or bequest to religious, educational, charitable or benevolent uses as to render impractical or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee * * * make an order directing that such gift, grant or bequest shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein”. (Personal Property Law [former] § 12 [2].)
This statute (EPTL 8-1.1 [c]) incorporates the doctrines of cy pres and equitable deviation (see, Restatement [Second] of Trusts §§ 381 [equitable deviations], 399 [cy pres]; 4 Scott, Trusts § 381, at 2983 [3d ed]; Note, Cy Pres & Deviation, 8 ABA Real Property, Probate & Trust J 391 [1973]).
Where the issue before the court is the identity or confirmed existence of the intended charitable beneficiary or the trust fund is inadequate to effectuate the creator’s charitable purpose, the statute authorizes the application of the doctrine of cy pres (Matter of Nurse, 35 NY2d 381; Matter of Scott, 8 NY2d 419; Matter of MacDowell, 217 NY 454; Matter ofGoehringer, 69 Misc 2d 145). On the other hand, where the charitable beneficiary is certain and the trust fund adequate but a change of circumstance, not known or anticipated by the grantor or testator, has made compliance with an administrative provision of the governing instrument impractical but does not defeat or substantially impair the purpose of a charitable trust, the doctrine of equitable deviation should be applied.
Although the issue before this court is not specifically covered by the statute nor are there any prior decisions directly on point, it appears that the court is empowered by the objectives of the statute (EPTL 8-1.1 [c]) and the philosophy concerning charitable trusts expressed by the Court of Appeals, to permit a deviation from an administrative investment direction on the ground that the change in economic circumstances in the past 80 years have made the income inadequate for the purpose intended by the grantor (see, Matter of Neher, 279 NY 370; Matter of Mac-Dowell, supra; Trustees of Sailors’ Snug Harbor v Carmody, 211 NY 286; Matter of Price, 264 App Div 29, affd 289 NY 751; Matter of St. John’s Church, 237 App Div 454, affd 263 NY 638).
*864 Accordingly, on all the circumstances, the trustee as requested in its petition is authorized to invest in investments permitted to fiduciaries pursuant to EPTL 11-2.2 (a) (7).